1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLES FRENCH,                          No.  2:18-cv-2191-KJM–KJN

12                  Plaintiff,                FINDINGS AND RECOMMENDATIONS
                                             ON PARTIES' CROSS MOTIONS
13          v.                               FOR SUMMARY JUDGMENT

14   COMMISSIONER OF SOCIAL                   (ECF Nos. 14, 15)
     SECURITY,
15
                    Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying plaintiff's application for Title XVI supplemental security income.[1]  In his summary

19   judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in weighing the

20   lay testimony, medical evidence, and physicians' opinions regarding his impairments, and erred

21   in the formulation of the residual functional capacity and questioning of the Vocational Expert

22   ("VE").  The Commissioner opposed and filed a cross–motion for summary judgment.

23          The court recommends DENYING the Commissioner's motion for summary judgment,

24   GRANTING IN PART plaintiff's motion for summary judgment, and REMANDING this case

25   for further proceedings.

26   ///

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for findings and
     recommendations.  (See ECF Nos. 8, 9.)

                                                    1

1    **I.       BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

2            Plaintiff applied for Title XVI benefits on August 18, 2014.  (Administrative Transcript

3    ("AT") 179.)  Plaintiff claimed the following physical and mental impairments:  "depression,

4    anxiety, neck and back pain, arthritis in his legs and arms, and an enlarged liver."  (AT 216, 257.)

5    Plaintiff's application was denied initially and again upon reconsideration.  (AT 93, 110.)

6    Plaintiff, aided by an attorney, sought review of these denials with an ALJ.  (AT 141–3.)  At a

7    January 11, 2017 hearing, the ALJ received testimony from plaintiff, his roommate, and his sister,

8    as well as a VE regarding the work abilities of a person with plaintiff's limitations.  (AT 37–69.)

9            On May 25, 2017, the ALJ issued a decision determining that plaintiff was not disabled

10   for the relevant period.  (AT 20–31.)  At step one, the ALJ concluded plaintiff had not engaged in

11   substantial gainful activity since August 18, 2014.  (AT 22.)  At step two, the ALJ determined

12   plaintiff had the following severe impairments: depression, anxiety, and degenerative disc disease

13   of the cervical and lumbar spine.  (Id.)  However, the ALJ determined at step three that these

14   impairments did not meet or medically equal the severity of a listed impairment.  (AT 23.)

15   Relevant here, the ALJ labeled as non-severe carpal tunnel syndrome (due to a lack of supporting

16   evidence) and a right-foot mass condition (because it existed less than 12 months).  (AT 22.)

17   _____

18   [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
     Security program.  42 U.S.C. §§ 401 et seq.  Disability is defined, in part, as an "inability to
19   engage in any substantial gainful activity" due to "a medically determinable physical or mental
     impairment. . . ."  42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs
20   eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S.
     137, 140–42 (1987).  The following summarizes the sequential evaluation:
21           **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
22           claimant is found not disabled.  If not, proceed to step two.
             **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
23           three.  If not, then a finding of not disabled is appropriate.
             **Step three**: Does the claimant's impairment or combination of impairments meet
24           or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
             claimant is automatically determined disabled.  If not, proceed to step four.
25           **Step four**:  Is the claimant capable of performing her past relevant work?  If so,
26           the claimant is not disabled.  If not, proceed to step five.
             **Step five**:  Does the claimant have the residual functional capacity to perform any
27           other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
     Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
28

                                            2

1    The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform

2    medium work, except that he could frequently climb and balance; occasionally stoop, kneel,

3    crouch and crawl; perform simple routine tasks; occasionally interact with supervisors, co-

4    workers and the public, and cannot work in tandem.  (AT 25.)  In reaching this conclusion, the

5    ALJ stated he considered all symptom testimony, medical evidence, and opinion evidence.  (AT

6    25–31.)  Relevant here, the ALJ gave little weight to Dr. Lode's opinion that plaintiff was

7    disabled (and did not mention Dr. Stanfield's similar opinions) (AT 31); found "few significant

8    and recurrent symptoms of abnormalities" regarding plaintiff's cervical spine (AT 27); and

9    rejected the more severe aspects of plaintiff's (and supporting) testimony (AT 26).[3]  Ultimately,

10   the ALJ concluded at step four that plaintiff was capable of performing past relevant work as a

11   painter for a saw mill, both as generally performed and as plaintiff performed it.  (AT 31–32.)

12   On June 26, 2018, the Appeals Council denied plaintiff's request for review.  (AT 1–6.)

13   Plaintiff then timely filed this action requesting judicial review of the Commissioner's final

14   decision, and the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 14, 15, 16.)

15   On February 19, 2020, the undersigned recommended remanding this case for further

16   proceedings.  (ECF No. 17.)  Therein, the undersigned was persuaded by plaintiff's argument

17   regarding the ALJ's assignment of "simple routine tasks" based on multiple "moderate" findings

18   in the paragraph B analysis.  (See ECF No. 14 at 23-28.)  Because remand was recommended, the

19   undersigned declined to address the remainder of plaintiff's arguments, as the ALJ would likely

20   need to reformulate plaintiff's RFC and hear testimony from the VE.  (See ECF No. 17.)

21   The Commissioner objected to this recommendation, and plaintiff filed a response.  (ECF

22   Nos. 18, 19.)  On September 3, 2020, the assigned district judge found for the Commissioner on

23   the paragraph B issue, and therefore declined to adopt the undersigned's recommendation.  (ECF

24   No. 20.)  The undersigned was then directed to address the remainder of plaintiff's arguments.

25   (See ECF No. 20.)

26

27   _____

[3] The ALJ also found allegations of liver disease/enlarged liver and arthritis lacked support,
plaintiff's hypertension was well controlled with regular management and treatment, and his
28   borderline intellectual functioning was minimally limiting.  These findings are unchallenged here.

1    **II.     STANDARD OF REVIEW**

2           The court reviews the Commissioner's decision de novo, and should reverse "only if the

3    ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ

4    applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).

5    Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such

6    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

7    Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for

8    determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.

9    The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one

10   rational interpretation."  Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the

11   court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F. 3d at 1048.

12   **III.    ISSUES PRESENTED**

13          Plaintiff alleges the ALJ erred by failing to:

14       A.  Give specific and legitimate reasons for rejecting:
             1.   Dr. Lode's findings regarding plaintiff's right-foot mass;
15           2.   Any limitations regarding carpal tunnel syndrome, given the results of
                  various nerve-conduction and grip-strength tests;
16           3.   Dr. Stanfield's and Dr. Lode's designation of plaintiff as "disabled," as
                  noted on plaintiff's "GA Disability Forms";
17           4.   Dr. Knickerbocker's finding that plaintiff suffered from "moderate-
18                severe right side foraminal narrowing;"
         B.  Give clear and convincing reasons for rejecting plaintiff's subjective-
19           symptom testimony;
         C.  Give germane reasons for rejecting the supporting lay testimony of plaintiff's
20           sister and roommate; and
         D.  Conduct a function-by-function analysis at Step Four in finding plaintiff was
21           able to perform his past work as a spray painter.

22

23   (ECF No. 14.)  Plaintiff requests the court either credit all evidence as true and remand for

24   benefits.  Alternatively, plaintiff requests a remand for further proceedings.

25          The Commissioner counters each of plaintiff's arguments, contending that substantial

26   evidence supported the ALJ's assessment of plaintiff's limitations and his reliance on the VE's

27   testimony.  (ECF No. 15.)  Thus, the Commissioner maintains the opinion should be affirmed.

28   ///

                                                    4

1  IV.  **DISCUSSION**

2          **A.  Rejection of Medical Opinion and Medical Evidence**

3          Legal Standard

4          The weight given to medical opinions depends in part on whether they are proffered by

5  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F. 3d 1195,

6  1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995).  Generally speaking,

7  a treating physician's opinion carries more weight than an examining physician's opinion, and an

8  examining physician's opinion carries more weight than a non-examining physician's opinion.

9  Holohan, 246 F. 3d at 1202.

10          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

11  considering its source, the court considers whether (1) contradictory opinions are in the record;

12  and (2) clinical findings support the opinions.  Lester, 81 F. 3d at 831.  An ALJ may reject an

13  uncontradicted opinion of a treating or examining medical professional only for "clear and

14  convincing" reasons.  Id. at 830.  A contradicted opinion of a treating or examining professional

15  may be rejected for "specific and legitimate" reasons.  Id.  An ALJ provides specific and

16  legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting

17  clinical evidence, stating [an] interpretation thereof, and making findings."  Magallanes v.

18  Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) (citation omitted).

19          While a treating professional's opinion generally is accorded superior weight, if it is

20  contradicted by a supported examining professional's opinion (supported by different

21  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

22  1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The regulations require the ALJ

23  to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the

24  ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical

25  findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

26

27  _____

[4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination;
(3) nature and extent of the treatment relationship; (4) supportability of diagnosis;

28  (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1    <u>Analysis</u>

2          **1. Right Foot Mass**

3          Plaintiff contends the ALJ erred in reviewing the medical evidence concerning his right-

4    foot pain.  The ALJ, at step two of the decision, considered evidence of a mass on plaintiff's right

5    foot, observing that plaintiff complained to Dr. Lode in October 2016 of a "lump in the arch of

6    his [right] foot" that "has gotten larger in size and is painful."  (<u>See</u> AT 22, 424.)  Dr. Lode

7    ordered an ultrasound, which revealed a "[s]mall hypoechoic solid area in the plantar surface"

8    with "uncertain" etiology which "could represent plantar fibromatosis."  (AT 498.)  In the May

9    2017 decision, the ALJ recognized that in December of 2016, plaintiff was prescribed a walker

10   for 99 months and referred to a podiatrist.  (AT 22.)  However, the ALJ ruled this condition was

11   not severe because it "had not existed for 12 months and medical notes provide no indication this

12   condition cannot be resolved in less than twelve months."  (<u>Id.</u>)  To support this conclusion, the

13   ALJ only cited Dr. Lode's December 2016 report.  (<u>Id.</u>, citing AT 508.)

14         The ALJ's conclusion regarding the duration element fails to take into account certain

15   other pieces of evidence in the record.  After plaintiff complained of the right foot mass in

16   October (AT 424), and an ultrasound confirmed the potential for plantar fibromatosis (AT 498),

17   Dr. Lode prescribed a walker for 99 months.  (AT 500.)  This fact by itself is at least probative of

18   Dr. Lode's opinion that the condition may be "expected to last for a continuous period of at least

19   12 months."  20 C.F.R. § 416.909.  Dr. Lode noted in December of 2016 that plaintiff was using

20   the walker to ambulate "due to foot pain."  (AT 510.)  Dr. Lode also noted the earliest available

21   podiatrist's appointment was in July of 2017—a month after the ALJ's decision was released.  In

22   January of 2017, Dr. Lode requested the referral team look into finding another podiatrist out of

23   network, but noted no changes in the original plan.  (<u>See</u> AT 515.)  Given the probative nature of

24   plaintiff's subjective complaints, treatment plan, ultrasound, and 99-month prescription for a

25   walker, it cannot be said that there is "no indication this condition cannot be resolved in less than

26   twelve months."  (AT 22.)  <u>See, e.g.</u>, <u>Garcia v. Astrue</u>, 2009 WL 1393470, at *4 (C.D. Cal. May

27   15, 2009) (rejecting ALJ's "conclusory statements that [p]laintiff's knee and shoulder

28   impairments did not meet the durational requirement" where medical records showed some

1    continuation of alleged conditions but ALJ released opinion prior to critical appointment dates);

2    see also, e.g., Garner v. Heckler, 745 F.2d 383, 389 (6th Cir. 1984) (presuming the continuation

3    of a condition "until such time as there is medical evidence to the contrary.").  For this reason,

4    this case should be remanded for further proceedings.

5           The Commissioner argues that because Dr. Lode lacked the "podiatric evaluation [he] felt

6    was required to determine the etiology of the mass or how to treat it," and because plaintiff was

7    prescribed the walker as a precaution, there is no medical "opinion" that the condition would

8    persist for 12 months.  (ECF No. 15. at 21.)  However, there need not be an express opinion on

9    the subject to trigger the ALJ's duty to resolve an issue; the ALJ is required to assess any medical

10   evidence indicating a condition exists.  See, e.g., 20 C.F.R. § 416.945(a)(3) ("We will assess your

11   residual functional capacity based on all of the relevant medical and other evidence.").  Further,

12   though the Commissioner argues the walker was merely precautionary, Dr. Lode never expresses

13   this opinion, and the ALJ fails to explain why Dr. Lode's prescription of the walker, referral to a

14   podiatrist, and ordering of additional tests is something less than a severe form of plantar

15   fibromatosis.  See, e.g., Lucker-McVae v. Comm'r, 2013 WL 712276, at *1 (D. Or. Feb. 27,

16   2013) (reciting the ALJ's severe impairment findings as including "plantar fibromatosis").

17   Admittedly, the ALJ might find that the foot condition is non-severe and have no effect on

18   plaintiff's ability to work.  See, e.g., Diaz v. Colvin, 2016 WL 7180308, at *3 (W.D. Wash. Dec.

19   9, 2016) (finding no indications the plaintiff's plantar fibromatosis impacted his ability to perform

20   basic work activities or had more than a minimal effect on his ability to work).  Regardless, the

21   ALJ is required to take the effects of plaintiff's non-severe conditions into account in formulating

22   the RFC.  See 20 C.F.R. § 416.945(e) (". . . we will consider the limiting effects of all your

23   impairment(s), even those that are not severe, in determining your residual functional capacity.").

24          Finally, the Commissioner notes that in March of 2017, the Dr. Lode completed a GA

25   Disability Form that expressed the opinion that plaintiff was disabled due to back and neck pain,

26   but not because of any foot mass.  (AT 518.)  The problem with the Commissioner's argument is,

27   the ALJ only cited to the GA Form once, in reference to plaintiff's back and neck conditions—

28   and gave it little weight.  (AT 31.)  Bray v. Comm'r, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-

1    standing principles of administrative law require us to review the ALJ's decision based on the

2    reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to

3    intuit what the adjudicator may have been thinking.").  As noted above, the only evidence the

4    ALJ cited to in support of his durational conclusion was Exhibit B13F.  (AT 22, citing AT 508-

5    16.)  Contrary to the Commissioner's assertions, Dr. Lode noted in these reports the right foot

6    mass (AT 510), the pain caused by this condition (AT 508), and his referral to a podiatrist (AT

7    510).

8         Dr. Lode says nothing about this condition resolving itself, and the undersigned finds no

9    evidence cited by the ALJ indicating otherwise.  On the contrary, there is evidence to suggest

10   plaintiff requires a walker in order to ambulate, and the ALJ included no discussion in his RFC

11   formulation about whether this impairment, severe or not, would affect plaintiff's ability to work

12   as a spray painter, much less how it would affect his ability to stand or move about the workplace.

13   By ruling on the duration element, the ALJ's dodges this inquiry and thus precludes any further

14   review by this court.  Thus, the evidence cannot be credited as true, as advocated by plaintiff, but

15   should be remanded for further proceedings.  Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir.

16   2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical

17   testimony, and resolving ambiguities.").

18        **B.  The court refrains from addressing plaintiff's other contentions.**

19        Because further proceedings are required, the court will not explicitly rule on plaintiff's

20   other contentions (regarding plaintiff's carpal tunnel syndrome, the analysis of plaintiff's GA

21   Disability Forms, Dr. Knickerbocker's findings regarding plaintiff's right side foraminal

22   narrowing), and the ALJ's analysis of plaintiff's symptom testimony and the medical opinions

23   and evidence thereof).  (See ECF No. 14.)  However, the court would be remiss if it failed to

24   mention that the ALJ's analysis concerning plaintiff's other physical impairments appears well-

25   reasoned.  On remand, it is (of course) within the ALJ discretion as to how much additional

26   analysis should be performed on these issues.

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    The Commissioner's motion for summary judgment (ECF No. 15) be DENIED;

2.    Plaintiff's motion for summary judgment (ECF No. 14) be GRANTED IN PART;

3.    This matter be REMANDED for further administrative proceedings; and

4.    The Clerk be directed to enter judgment in plaintiff's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  October 26, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

fren.2191

9